UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:07-CR-105 |
| V. | ) | District Judge Greer |
| | ) | Magistrate Judge Inman |
| JOHN FREDERICK UTESCH | ) | |


## REPORT AND RECOMMENDATION

Convicted in Iowa for a sexual offense involving a child, defendant has been indicted

in this court for failing to register in Iowa as a sex offender as required by Iowa law.

Defendant has entered into a plea agreement with the United States, subject to his right

to attack the constitutionality of the law under which he is charged. In that regard, defendant

has filed a motion to dismiss the indictment (Doc. 15), in which he attacks the

constitutionality of the Sex Offender Registration and Notification Act ("SORNA")[1] and its

applicability to him. This motion has been referred to the United States Magistrate Judge for

a report and recommendation under the standing orders of this Court and pursuant to 28

U.S.C. § 636(b). A hearing was held on February 7, 2008.

In 1997, defendant was convicted in Iowa of assault with the intent to commit sexual

abuse of a fourteen-year-old girl, an aggravated misdemeanor. He was sentenced to three

---

[1]A part of the Adam Walsh Child Protection and Safety Act, P.L. 109-248, Secs. 1-155.

hundred sixty-five days of confinement, reduced to thirty days, followed by one year of supervised release.  Under Iowa law, defendant was classified as a sex offender and therefore required to register as such for a period of ten years after his release from confinement.[2]  Iowa's sex offender registry is maintained by its Department of Public Safety.  Within five days of his release from custody, defendant was required to register with the Sheriff of the county in which defendant then resided.[3]  If defendant moved to another state, he was obligated within five days of his relocation to notify the Sheriff of the Iowa county in which he first registered, as well as registering as a sex offender in the state to which he moved.[4]  Defendant was obligated to annually verify his address to the Iowa Department of Safety.[5]

  A violation of any of these requirements is an aggravated misdemeanor for a first offense, and a Class B felony for a second or subsequent offense.[6]

Defendant initially registered in September 1997, as he was required to do.  He subsequently re-registered in November 1998, April 1999, April 2000, and November 2001.  Thereafter, defendant severed his contact with the Iowa Department of Safety.  The Department of Safety mailed to defendant,  at his last-known address in Iowa, Verification of Address forms in 2003, 2004, 2005 and 2006; all were returned to the Department of

---

[2]Iowa Code Ann. § 692A.2.

[3]Iowa Code Ann. § 692A.3(1).

[4]Iowa Code Ann. § 692A.3(4).

[5]Iowa Code Ann. § 692A.4.

[6]Iowa Code Ann. § 692A.7.

Safety as undeliverable.

In October 2002, defendant moved to Virginia, and he registered in that state as a sex offender.

In December 2002, defendant moved to Tennessee, wherein he has resided continuously thereafter. By virtue of defendant's Iowa conviction, under Tennessee law he is considered to be a sexual offender and therefore required to register as such with the Sheriff of the Tennessee county in which defendant resides within forty-eight hours of establishing his residence.[7]

When defendant moved from Iowa to Virginia in October 2002, he began working for S&G Labor Forces, a Tennessee company. As previously noted, he moved from Virginia to Tennessee in December 2002, but he continued working for S&G Labor Forces until July 2004, at which time he began construction work. He continued working in the construction industry until August 2005, after which he began working for K-VAT, Inc. in Bristol, Virginia, where he continued working until he was placed on leave as a result of this pending indictment. Accordingly, inasmuch as defendant moved to Tennessee in December 2002, defendant necessarily crossed the state line every day to report to work at K-VAT.

Defendant never registered with any Tennessee authority as a sex offender as he was required to do both under Iowa and Tennessee law.[8] Defendant stipulates that he was aware

---

[7]Tenn.Code Ann. § 40-39-203.

[8]After his arrest on the indictment filed in this court, defendant registered with the Tennessee authorities as a sex offender as this court ordered him to do as a condition of his pretrial release.

of his obligation to annually register in Iowa. He does not stipulate that he was aware of SORNA or his obligation to register thereunder.

SORNA was enacted and became effective in July 2006. It was codified at 18 U.S.C. § 2250, and 42 U.S.C. §§ 16911, *et seq.*

Section 16911 of Title 42 of the United States Code categorizes sex offenders as Tier I, II, or III Offenders according to the nature of the sex crime of which they were convicted. It also defines various terms, including "Sex Offender Registry" and "Jurisdiction." The latter term is defined to mean any state or territory of the United States, as well as the District of Columbia.

Section 16912 of Title 42 requires each jurisdiction to maintain a Sex Offender Registry. This section directs the Attorney General to issue guidelines and regulations "to interpret and implement this subchapter."

Section 16913 directs a sex offender to register in each jurisdiction where he resides, employed, and where a student (if applicable), and to keep those registrations current. He is to make his initial registration before completion of any sentence of imprisonment imposed as a result of a conviction that gives rise to the registration requirement, or within three days of imposition of any sentence other than imprisonment. Of particular importance to this case, subsection (d) provides that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the initial

registration requirements] of this section."

Section 16914 lists the information to be maintained in each state's Sex Offender Registry, some of which must be supplied by the offender, and some of which must be provided by the jurisdiction.

Section 16915 establishes the length of time a registration must be maintained. That time is based upon the categorization of the sex offender as established in Section 16911.

Section 16916 requires a sex offender to periodically verify the information about him maintained by the Registry. The verification is required annually if the offender is classified as a Tier I sex offender under § 16911, or every six months if a Tier II offender, or every three months if a Tier III offender.

Section 16917 requires an appropriate official in the jurisdiction where the offender is convicted to notify him of the registration requirements of SORNA. It also requires the offender to sign a form acknowledging that those requirements have been explained to him and that he understands them. Additionally, the jurisdiction must "ensure that the sex offender is registered."

Section 16918 requires each jurisdiction to provide internet access to its Sex Offender Registry.

Section 16919 directs the Attorney General to maintain a national data base at the Federal Bureau of Investigation for each sex offender.

Section 16922 requires any "appropriate official" to notify the Attorney General and appropriate law enforcement agencies of the failure of any sex offender to comply with the

registration requirements.

Section 16923 directs the Attorney General to develop and support software to enable the various jurisdictions "to establish and operate uniform sex offender registries and Internet sites."

Section 16924 directs each jurisdiction to implement the provisions of SORNA on or before July 27, 2009, or one year after the software described in § 16923 becomes available, whichever is later. If a jurisdiction fails to "substantially implement" the provisions of SORNA within this time frame, the jurisdiction shall not receive ten percent of federal funds[9] it otherwise would receive for that fiscal year.

Lastly, Section 2250 of Title 18 of the United State Code makes it a *federal* crime for sex offender to fail to register in accordance with the registration requirements; specifically, if a sex offender travels in interstate commerce and knowingly fails to register or update a registration as required by SORNA, he faces up to ten years of imprisonment.

On February 28, 2007, pursuant to 42 U.S.C. § 16912 and 16913, the Attorney General of the United States promulgated an interim rule "to specify that the requirements of [SORNA] apply to sex offenders convicted . . . before the enactment of [SORNA]."[10] On May 30, 2007, again pursuant to 42 U.S.C. § 16912, the Attorney General issued guidelines -

---

[9]Grant funds under 40 U.S.C. § 3750, *et seq*.

[10]28 C.F.R. § 72.1-3.

the "SMART"[11] guidelines - to interpret and implement SORNA.[12]  In those guidelines, the Attorney General cited that the purpose of the guidelines is to "provide guidance and assistance to the states and other jurisdictions in incorporating the SORNA requirements into their Sex Offender Registration and Notification Programs," noting that at that time registration and notification programs exist in all fifty states, the District of Columbia, and some territories and Indian tribes.  This document also noted that SORNA constitutes a set of minimum national standards and "sets a floor, not a ceiling, for jurisdictions' programs."[13] *That document also made it clear that the requirements of SORNA applies to sex offenders whose convictions occurred before a jurisdiction's implementation of conforming registration requirements.*[14]

Defendant asks that this indictment be dismissed on various legal grounds:

First, he argues that neither Tennessee, Virginia, nor Iowa have implemented the procedures required by SORNA, and therefore SORNA is not applicable to him.  He goes on to argue that since these states have not yet implemented the requirements of SORNA, charging him with a violation of SORNA violates the *ex post facto* and due process clauses of the Constitution.

Second, he argues that he had no duty to register [with the Iowa authorities] under

---

[11]For "Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking."

[12]72 F.R. 30210, 2007 WL 1540140 (F.R.).

[13]72 F.R. 30210, ¶ B.

[14]*Id.,* ¶ C.

SORNA because the Government failed to give him notice of such duty, and charging him criminally with failing to register violates the due process clause.

Third, he insists that Congress unconstitutionally delegated to the Attorney General the responsibility of determining the retroactivity of SORNA.

Fourth, defendant maintains that 28 C.F.R. § 72.3, which undertakes to make SORNA retroactive, violates the Administrative Procedure Act, 5 U.S.C. § 553, since it was promulgated without a thirty-day notice and comment period.

Fifth, he argues that 18 U.S.C. § 2250(a)(2)(A) violates the Commerce Clause because it undertakes to punish "purely local intrastate activity that does not substantially affect interstate commerce."

Sixth, he argues that 18 U.S.C. § 2250(a)(2)(B) which criminalizes interstate travel after failing to register, violates the *ex post facto* and Commerce Clauses.

Seventh, he argues that SORNA violates the Tenth Amendment by "commandeering state officials into administering federal law."

Each of these arguments will be discussed *seriatim*, although it should be noted that some arguments are intertwined with others.

All of defendant's arguments have been raised by defendants charged with a violation of SORNA in various districts across the country. So far as known, no Court of Appeals has yet ruled on any of these issues. Every decision at this time has emanated from a district court, and there is a myriad of them. A very few district courts have ruled for the defendant in one particular or another; by far, most of the district courts which have considered the

various issues upon which defendant herein relies have ruled against the defendant and in favor of the United States.

To discuss all the cases, pro and con, would serve no purpose other than to greatly extend this already too-lengthy report and recommendation. Bearing in mind that a district court case has no precedential value, and that its utility is limited to the logic and reasonableness of its decision, this report refers only to those district court cases which, in the opinion of this magistrate judge, are based on sound, legal logic. AUSA Smith has furnished the court with copies of cases which both support and contradict her position. That is greatly appreciated.

> *INASMUCH AS TENNESSEE, VIRGINIA, AND IOWA HAVE NOT IMPLEMENTED THE PROCEDURES REQUIRED BY SORNA, IS SORNA APPLICABLE TO DEFENDANT? AND, IN LIGHT OF THESE STATES' FAILURE TO ADOPT THE SORNA PROCEDURES, IS IT A VIOLATION OF THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE CONSTITUTION TO CHARGE DEFENDANT WITH A VIOLATION OF SORNA?*

Defendant argues that although the Attorney General has promulgated a regulation[15] that makes SORNA's application retroactive to persons convicted before enactment of the act, he has not adopted a rule or regulation that makes the act retroactively applicable to persons convicted before SORNA's *implementation* in Iowa, Tennessee, or Virginia.

It is undeniable that SORNA's registration requirements are more extensive than those of any of the three states just mentioned. It is also true that none of these states now provide the extensive on-line access to registration data that SORNA requires. Indeed, apparently

---

[15]27 C.F.R. § 72.3.

the software referred to in 42 U.S.C. § 16923 has not yet been created.  Therefore, so defendant argues, since SORNA has not yet been implemented in these states, defendant cannot be constitutionally convicted under 18 U.S.C. § 2250 for failing to register as required by Tennessee's and Iowa's current laws.   He says that punishing him under this federal law would violate the *ex post facto* clause of the Constitution,[16] and also would amount to a violation of the due process clause of the Fifth Amendment since it is impossible for him to register as required by SORNA in a state where SORNA has not been implemented.

It is beyond argument that the defendant knew of his obligation to register as a sex offender in the state of Iowa; after all, he did so for a number of years.  Similarly, he cannot argue that he was unaware of his obligation to register as a sex offender in Virginia; again, he did so on one occasion.  And he cannot argue that he did not register in Tennessee because he was unaware of Tennessee's requirements any more than he could successfully argue that he cannot be convicted of drunk driving because he was unaware of Tennessee's DUI statutes; he is presumed to know the law.  It is with the foregoing in mind that defendant's challenges to this indictment must be analyzed.

### CONSTITUTIONAL QUESTIONS ASIDE, DOES SORNA APPLY TO DEFENDANT?

Defendant's argument that SORNA by its very terms does not apply to him is not without some logic.  Section 2250(a) of Title 18 of the United States Code makes it a federal criminal offense to travel in interstate commerce and knowingly fail to register or

---

[16]Article I, § 9, Cl. 3.

update a registration *as required by the Sex Offender Registration and Notification Act.* Defendant undeniably violated Iowa's and Tennessee's sex offender registration laws, but he argues that he did not violate any registration requirements imposed by SORNA since neither Tennessee nor Iowa have yet implemented those procedures.  However, 42 U.S.C. § 16912 directs the Attorney General to issue guides and regulations "to interpret and implement" SORNA.  The Attorney General did so in 28 C.F.R. § 72, in which it is explicitly provided that SORNA applies to sex offenders convicted of any predicate offense before enactment of SORNA.  Further, 42 U.S.C. § 16913(d) grants authority to the Attorney General "to specify the applicability of [SORNA's] requirements . . . to sex offenders convicted before . . . its *implementation* in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the initial registration requirements]." [Italics supplied].  In 72 Fed. Reg. 30210, issued in May 2007, the Attorney General explicitly stated that the applicability of SORNA is not limited to sex offenders who committed the predicate sex crime after a jurisdiction's *implementation* of a conforming registration program; rather, SORNA's requirements are applicable to all sex offenders.[17]  Thus, in light of both the Attorney General's determination that SORNA applies to individuals such as defendant herein and the statutory authority underlying that determination, it now must be decided if SORNA's application to defendant is constitutional.  As noted, defendant argues that applying SORNA to him is violative of both the *ex post facto*

---

[17]72 Fed. Reg. 30210 ¶ C.

and due process clauses.

IS RETROACTIVELY APPLYING SORNA TO DEFENDANT CONSTITUTIONAL?

Defendant asserts that if SORNA applies to him, it would constitute an *ex post facto* law as well as being a violation of due process under the Fifth Amendment. As far as is known, no court of appeals has yet addressed these issues.[18] A number of district courts have done so, however, and the decisions are by no means consistent. Most, by far, have held that SORNA violates neither the *ex post facto* clause nor the due process clause.

*Ex Post Facto Analysis*

For a sex offender to commit a violation of 18 U.S.C.§ 2250, three circumstances must be present: (1) defendant must be required to register in some jurisdiction, (2) knowingly fail to register or update a prior registration, and (3) *travel in interstate or foreign commerce.*

For a criminal or penal statute to be *ex post facto,* "two critical elements must be present . . . : it must be retrospective, that is, it must apply to the events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 21 (1981). "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987). However, "[a] statute does not violate *ex post facto* principles where it applies

---

[18]The Eastern District of Michigan has held that applying SORNA in a case involving interstate travel that occurred prior to SORNA's enactment violates the *ex post facto* clause. That case is now in the first stages of an appeal to the Sixth Circuit. *United States v. Bobby Brown*, 481 F.Supp.2d 846 (E.D.Mich. 2007).

to a crime that 'began prior to, but continued after' the statute's effective date." *United States v. Brady*, 26 F.3d 282, 291 (2nd Cir. 1994).

Defendant was obligated to update his registration in Iowa ever year; the last date he did so was in 2001. At the very least, he was obligated to continue registering in Iowa through 2007, beyond the date SORNA was enacted, and beyond the date the Attorney General issued his ruling that SORNA would be retroactively applied. Additionally, he was obligated to register in Tennessee, which he never did; that obligation existed before and after the enactment of SORNA and the Attorney General's ruling. He also traveled in interstate commerce after the enactment of SORNA and the Attorney General's ruling; indeed, he did so every work day, inasmuch as he resided in Tennessee and worked in Virginia.[19]

The only remaining ground to attack SORNA's application to defendant on an *ex post facto* basis is the fact that SORNA substantially increases the punishment for non-registration. In Iowa, defendant confronts at the most a sentence of five years for failing to maintain his registration.[20] Under 18 U.S.C. § 2250, he faces a potential maximum sentence of ten years. Defendant argues that this greater punishment constitutes

---

[19]If the last time the defendant traveled in interstate commerce was some time prior to SORNA's enactment in July 2006, a thornier problem would be presented. Numerous district courts have held that the lack of post-enactment interstate travel presents no *ex post facto* problem, although a few have, including the Eastern District of Michigan. Even if the Eastern District of Michigan is correct in its conclusion, its rationale has no application to defendant herein since defendant undeniably traveled in interstate commerce on almost a daily basis after SORNA's enactment. *See, United States v. Bobby Brown, supra*.

[20]Iowa Code Ann. § 902.9(5).

an *ex post facto* law.

The *ex post facto* clause applies only to criminal statutes;[21] if the statute is civil and regulatory, it cannot be violative of the *ex post facto* clause even when applied retrospectively. The United States Supreme Court has held that Alaska's sex offender registration law, applied retroactively to persons who committed their offenses prior to the law's enactment, is regulatory and therefore civil, notwithstanding that the law contains criminal sanctions for failure to register as required. *See, Smith v. Doe*, 538 U.S. 84 (2002). In *Smith*, the Supreme Court established a test to be applied in an *ex post facto* analysis:

> [The] court must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, [the court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Because [the court] ordinarily [should] defer to the legislature's state of intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

538 U.S. at 92.

Alaska's statute and SORNA are essentially identical. *See, e.g., United States v. Cardenas*, 2007 WL 4249513, Fn. 3 (S.D. FL 2007). The purpose of SORNA is regulatory, *viz*, to insure that the public has a means to acquire information regarding potential sexual predators that could pose a danger to their children. To be sure, SORNA provides for up to ten years incarceration, but that concerns *post*-enactment failure

---

[21]*Webster v. Sowders*, 2998 WL 537537 (6th Cir. 1998).

to register; it is not punishment for the original offense. *Cardenas, supra*, at *10; *United States v. Carr*, 207 WL 3256600 at *3 (N.D. Ind. 2007).

The vast majority of courts have rejected *ex post facto* challenges to SORNA on the same basis as above, i.e., that SORNA is regulatory and civil, not criminal. But even if SORNA is considered to be a punitive measure, it still withstands *ex post facto* challenge. In this regard, this magistrate judge agrees with the reasoning of District Judge DuBose in the Southern District of Alabama:

> In an apparent effort to establish federal jurisdiction over a sex offender that failed to register as required, Congress also provided as an element of the offense that the defendant "travels" in interstate commerce and then fails to register as required. 18 U.S.C. § 2250(a)(2)(B). The act of traveling in interstate commerce and then failing to register as required became subject to prosecution no earlier than July 27, 2006, i.e., the effective date of 18 U.S.C. § 2250. Accordingly, in order to avoid the prohibition of retroactive punishment the defendant must travel in interstate commerce and fail to register after 18 U.S.C. § 2250 became effective.

*United States v. Kent*, 2007 WL 2746773 at *2 (S.D. Ala. 2007).

Here, defendant traveled multiple times in interstate commerce, not only after the enactment of SORNA in July 2006, but after the Attorney General's retroactive application of SORNA in February 28, 2007.

Applying SORNA to defendant does not violate the *ex post facto* clause.

*Due Process Analysis*

Defendant argues that inasmuch as neither Iowa, Tennessee, nor Virginia have implemented SORNA, it is impossible for him to register in compliance with SORNA, and that punishing him for failing to do something that it is impossible to do

violates the due process clause's guarantee of fundamental fairness, citing *United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992).

The flaw in defendant's argument is that his premise is faulty; it was not impossible for him to comply with SORNA's registration requirements. He did so (in Iowa) in 1997 and thereafter through 2001. He also did so in Virginia in 2002. He could have complied with his registration requirements in Iowa for the years 2002 and thereafter if he had chosen to do so. Similarly, he could have complied with Tennessee's registration law had he merely elected to do so. To be sure, the registration requirements in Iowa and Tennessee do not meet all of SORNA's requirements. But defendant is not being prosecuted for providing less information than SORNA requires; he is being prosecuted for failing to register at all. "The fact that the states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so), is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act. It was clearly possible for the Defendant to comply with SORNA, and as such, there is no due process violation." *United States v. Adkins*, 2007 WL 4335457 at *6 (N.D. Ind. 2007). Defendant admittedly knew of his obligations to register in Iowa and Virginia; after all, he did so for a time. And as a matter of law he cannot claim ignorance of Tennessee's registration requirements or SORNA's:

> Defendant claims he was denied due process because he received no notification of SORNA's requirements. This amounts to a claim that ignorance of the law excuses non-compliance. Unsurprisingly, Defendant cites no authority for this proposition, which is at odds with centuries of Anglo-American jurisprudence. Few offenders have ever had relevant sections of the U.S. Code read to them before committing

their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation. *See, e.g. United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir.2000) (knowledge that firearm ownership was prohibited not necessary to sustain conviction under 18 U.S.C. § 922(g)). Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.

*United States v. Roberts*, 2007 WL 2155750 at *2 (W.D. Va. 2007).

There was no due process violation.

### WAS DEFENDANT INFORMED OF HIS OBLIGATIONS UNDER SORNA, AND WAS HE REQUIRED TO COMPLY WITH ITS REQUIREMENTS?

Defendant points out that 42 U.S.C. § 16917 requires the United States to affirmatively inform offenders of SORNA before any duty to register under the act arises. He notes that he was not in custody when SORNA was enacted and applied retroactively to offenders by rule of the Attorney General, as a result of which there was no mechanism by which he could have learned of SORNA's requirements. Since he received no notice regarding SORNA, defendant insists that prosecuting him for failing to register violates his due process rights, and amounts to prosecution under an *ex post facto* law. He further argues that his knowledge of Iowa's registration requirements cannot substitute for notice under SORNA itself, inasmuch as SORNA's registration requirements differ from those of Iowa, Virginia, or Tennessee. Lastly, defendant again points out that the penalties for violating SORNA are greater than the penalties that result from a violation of Iowa's or Tennessee's registration laws, from which plaintiff concludes that he is being prosecuted under an *ex post facto* law.

17

Plaintiff primarily relies upon *Lambert v. California*, 355 U.S. 225 (1958). In *Lambert*, a Los Angeles city ordinance required convicted felons to register with the city. Mr. Lambert failed to do so, and he was thereafter prosecuted. The Supreme Court held that he was being prosecuted for "passive" conduct, i.e., a "mere failure to register," as a result of which prior notice to him was an essential requirement:

> Notice is sometimes essential so that the citizen has the chance to defend charges. . . . Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. . . . [T]he the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

*Id.* at 228.

Defendant argues that his failure to register was "wholly passive conduct," and that he had no notice that a federal statute required him to register. Anticipating the United States' response, he goes on to argue that his duty to register under state law does not substitute for the requisite notice under SORNA, because SORNA's registration requirements are stricter than those of Iowa, Tennessee, or Virginia.

It is with this last prong of defendant's argument that this court disagrees; his undeniable knowledge of his requirement to annually update his registration in Iowa and his knowledge to register in Tennessee upon moving here, essentially satisfied the "notice" requirements implicit in the due process clause. In this regard, the reasoning of the district court of the Northern District of Iowa, in a case with remarkably similar facts, is persuasive:

> Given [defendant's] previous registration in Michigan, and his knowledge that he was at least violating Michigan law when he failed to update his registration as required when he moved to Iowa, [defendant] cannot reasonably argue he was "unaware of any wrongdoing." As the Eighth Circuit Court of Appeals noted in *United States v. Hutzell*, 217 F.3d 966 (8th Cir. 2000), "The *Lambert* principle

applies . . . only to prohibitions on activities that are not *per se* blameworthy." *Id.* at 968 (citations omitted).[Defendant's] failure to update his registration when he moved to Iowa was per se blameworthy, making *Lambert* inapplicable to him, and he cannot rely on *Lambert's* exception to the long-standing rule that "ignorance of the law is no excuse." *Id.*

*United States v. Howell*, 207 WL 3302547 (N.D. Iowa 2007).

In the same vein, reference is made to the quotation from *United States v. Roberts* appearing on page 17 of this report.

Defendant's *ex post facto* argument has already been discussed, and there is no need to do so again.

Defendant was charged with knowledge of his obligation to register under SORNA, and there is no due process violation in that regard.

### *DID CONGRESS UNCONSTITUTIONALLY DELEGATE TO THE ATTORNEY GENERAL THE RESPONSIBILITY FOR DETERMINING THE RETRO-ACTIVITY OF SORNA?*

18 U.S.C.§ 16913(d) provides that the Attorney General "shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006, or its implementation in a particular jurisdiction . . . ." Defendant argues that Congress' delegation to the Attorney General of the authority to specify SORNA's applicability to offenders convicted before passage of the act and before SORNA's implementation is a violation of the nondelegation doctrine, *citing Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935): "Congress is manifestly not permitted to advocate or transfer to others the legislative functions with which it is vested." *Id.* , 421.

So far, every court who has considered this argument has rejected it. *See, e.g., United*

*States v. Hinen*, 487 F.2d 747 (W.D. Va. 2007):

> Even if the statute is open to the interpretation that it gives the Attorney General the authority to determine the applicability of SORNA to all sex offenders with convictions predating its enactment, the canon of constitutional avoidance preponderates in favor of finding that Congress did not cede its core legislative functions to the executive branch by the language in subsection (d).

487 F.Supp.2d at 753.

*See also, United States v. Ambert*, 2007 WL 2949476 at *7; *United States v. Cardenas*, 2007 WL 4245913 at *10 (N.D. Fla.); *United States v. Elliott*, 2007 WL 4365599 at *7 (S.D. Fla. 2007).

The reasoning of the above courts, and all others which have considered this question, is more than persuasive. There was no unconstitutional delegation of legislative authority by Congress to the Attorney General.

### DID THE ATTORNEY GENERAL'S PROMULGATION OF HIS REGULATION AT 28 C.F.R. § 72.3 VIOLATE THE ADMINISTRATIVE PROCEDURES ACT?

It is the regulation reported at 28 C.F.R. § 72.3 that made SORNA retroactively applicable to defendant and others similarly situated. Defendant argues that this regulation was promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 533, inasmuch as the Attorney General failed to provide public notice and a period for comment.

Section 553 of Title 5 of the United States Code sets out the procedures that an agency must follow when it intends to adopt a rule. Basically, the agency must give public notice at least thirty days before the effective date of the proposed rule, and it must within that time solicit comment from the public. Subsection (b)(3) provides for an exception to the notice

requirement:

> Except when notice or hearing is required by statute, this subsection does not apply -
>
> (A) * * *
>
> (B) When the agency for good cause finds (and incorporates the finding in brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

Within the body of the proposed rule the Attorney General recited:

> The implementation of this rule as an interim rule, with provisions for post-promulgation comments, is based on a "good cause" exceptions found at 5 U.S.C. § 553(b)(3)(B) and (d)(3), for circumstances in which "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(3)(B).
>
> The rule specifies that the requirements of the Sex Offender Registration and Notification Act apply to all sex offenders (as defined in that Act), including those convicted of the offense for which registration is required prior to the enactment of the Act. The applicability of the Act's requirements promotes the effective tracking of sex offenders following their release, by means described in sections 112-17 and 119 of the Act . . . .
>
> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements - and related means of enforcement, including criminal liability under 18 U.S.C.§ 2250 for sex offenders who knowingly fail to register as required - to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register . . . .
>
> It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. § 533(b) or with the delayed effective date normally required under 5 U.S.C. § 533(d).

Unlike the other grounds raised by defendant in his motion to dismiss, very few courts have addressed this particular issue in the context of SORNA. The one court which was confronted with the question held that "[t]he Attorney General demonstrated good cause for

failing to comply with the strictures of the [Administrative Procedure Act], therefore, the [rule] was valid." *United States v. Gould*, 2007 WL 4371418 (D. Md. 2007).

This court agrees with the decision of the *Gould* court; the Attorney General stated good cause for promulgating the rule without prior notice and without prior public comment.

### *DOES 18 U.S.C.§ 2250(a)(2)(A) VIOLATE THE COMMERCE CLAUSE?*

Defendant insists that, to the extent the indictment relies upon the jurisdictional provision in § 2250(a)(2)(A), the indictment should be dismissed because that statutory section purports to regulate a purely intrastate activity that does not substantially affect interstate commerce. Not unexpectedly, defendant relies upon *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000).

Section (a)(2)(A) does not apply to defendant. It applies to those individuals who are classified as sex offenders as a result of a conviction under *federal law*, or the law of the *District of Columbia*, or *Indian tribal law*, or the law of "*any territory or possession of the United States*." Defendant herein was not convicted under federal law, or the law of the District of Columbia, or any Indian tribal law. He was convicted under Iowa law, a state of the United States. Therefore, it is unnecessary to discuss defendant's argument that § (a)(2)(A) violates the commerce clause. Defendant admittedly traveled in interstate commerce many times after he ceased registering with Iowa and after the enactment and implementation of SORNA. Section (a)(2)(B) applies to defendant, not § (a)(2)(A).

### *DOES JURISDICTION BASED ON § 2250 (a)(2)(B) VIOLATE THE EX POST FACTO CLAUSE OR THE COMMERCE CLAUSE?*

The indictment charges defendant with traveling in interstate commerce between September 1, 2006 and November 12, 2007, after having failed to register and update his registration subsequent to his 1997 conviction.[22] Defendant points out that it was on February 28, 2007 that the Attorney General issued his regulation making SORNA retroactive to defendant. Therefore, so defendant argues, any duty to register under SORNA arose on or after February 28, 2007, and he cannot be prosecuted based on any travel activities that occurred prior to February 28, 2007.

### IS IT EX POST FACTO?

First, this particular issue is perilously close to one that the court should not address, simply because there is no need to do so; defendant admittedly traveled in interstate commerce many times after February 28, 2007. Indeed, he did so almost daily. In any event, for reasons explained in a prior section of this report,[23] SORNA is a civil and regulatory statute, not a punitive one, and therefore a retroactive application to defendant, even with respect to travel that occurred prior to February 28, 2007, does not violate the *ex post facto* clause of the Constitution. *See, e.g., United States v. Carr*, 2007 WL 3256600; *United States v. Ambert*, 2007 WL 2949476 (N.D. Fla. 2007); *United States v. Gould*, __ F.Supp.2d __, 2007 WL 4371418 (D.Md. 2007). The foregoing notwithstanding, it bears repeating that defendant is charged with interstate travel not only before February 28, 2007, but also with

---

[22]Defendant's brief erroneously recites that the indictment charges the defendant with traveling in interstate commerce between August 21, 2006 and July 18, 2007.

[23]P. 14.

traveling in interstate commerce on many occasions thereafter.

## *DOES IT VIOLATE THE COMMERCE CLAUSE?*

Defendant next maintains that there is no nexus between his interstate travel and his failure to register as a sex offender, and therefore § 2250 violates the Commerce Clause.  Defendant relies on *Lopez* and *Morrison*, *supra*.

The Court's analysis must begin with *United States v. Lopez*, 514 U.S. 549 (1995).  *Lopez* was something of a sea change in Supreme Court jurisprudence as far as the Commerce Clause is concerned.  From the time of Chief Justice John Marshall until the mid-20th Century, the cases under the Commerce Clause dealt with what the Commerce Clause prohibited, either to the states or the federal government.  But then in the mid-20th Century, the emphasis shifted; the Supreme Court began to uphold various federal legislative enactments on the basis that even intrastate activities could be federally regulated if those activities affected interstate commerce in some fashion.  Since virtually anything and everything, especially in this day and time, can be said to affect interstate commerce at least to some degree, Congress enacted vast amounts of legislation under the Commerce Clause, which was consistently upheld by the Supreme Court.

And then *Lopez* was decided.  *Lopez* involved a prosecution under 18 U.S.C. § 922(q)(1)(A) which made it a federal crime to possess a firearm in a school zone.  The Court obviously was concerned that the Commerce Clause was becoming a master passkey used by Congress to open every conceivable legislative and regulatory lock.  The Supreme Court struck down the statute, finding that it exceeded Congress's authority under the

Commerce Clause. *Lopez* held that Congress may regulate three broad categories of activities under the Clause: (1) it may regulate the channels of interstate commerce; (2) it may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activity; and (3) it may regulate those activities having a "substantial relation" to interstate commerce. 514 U.S. at 558.

If § 922(q) was to be upheld, it would be under the third factor, the "substantial relationship" category. *Id.*, at 559. First, as a criminal statute dealing with possession of a firearm, § 922(q) had nothing to do with commerce in the ordinary meaning of that word; i.e., no commercial transaction was involved. *Id.,* at 561. Second, the statute had no language that limited the prohibited transaction to commerce in any way. Lacking such a "jurisdictional element," a court could not determine in any given case that the particular circumstances of the defendant's possession of a gun somehow involved interstate commerce. *Id.*, at 561-2. Third, although the possession of a gun on school property could obliquely affect interstate commerce, as could practically any activity, the effect was far too attenuated to pass muster under the Commerce Clause. Fourth, the Supreme Court noted that "the question of congressional power under the Commerce Clause is 'necessarily one of degree.'" *Id.,* at 566. The Court held that possession of a gun on school property could have a theoretical impact upon interstate commerce, but that impact was *de minimis*, i.e., far too attenuated. As a result, § 922(q) was held to be unconstitutional.

The Supreme Court later decided *United States v. Morrison*, 529 U.S. 598

(2000), which concerned the Violence Against Women Act, 42 U.S.C. § 13981. This Act created a civil cause of action for anyone injured by the violent act of another, if that violent act was motivated by the victim's gender. As it did in *Lopez*, the Supreme Court declared that the Act exceeded Congress's power under the Commerce Clause. The Supreme Court indicated that, when considering whether an activity "substantially affects" interstate commerce (the third prong under *Lopez)*, a court should consider four factors: (1) Is the prohibited activity commercial or economic? (2) Is the statute's scope limited by an explicit jurisdictional element within it, i.e., a requirement that the proscribed activity somehow be involved with interstate commerce? (3) Did Congress make findings regarding the effect of the prohibited conduct on interstate commerce? And (4), is the link between the activity and interstate commerce truly substantial, or is it attenuated? 529 U.S. 610-612. Obviously, a violent assault was neither economic nor commercial behavior. *Id.,* at 613. Neither did the statute have any jurisdictional element, such as interstate travel to commit the assault. *Id.* Congress, however, did make findings regarding the impact of gender-motivated violence upon interstate commerce, but the Court noted that a congressional finding of an impact on interstate commerce did not necessarily mean that there was one; the final decision in that regard resided with the Court. *Id.*, at 614. And, finally, the Court concluded that the impact on interstate commerce of the prohibited activity, *viz*, gender-motivated assault, was attenuated. *Id.*, at 615.

Therefore, *Lopez* and *Morrison*, when read together, suggest the following: (1) Practically any intrastate activity can be said to affect interstate commerce. (2) There must

be some limit on the power of the federal government to regulate intrastate activity; otherwise, Congress will supplant the state legislatures.[24]  (3) Under the Commerce Clause, Congress may validly regulate the use of the channels of commerce, and it may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, and it may regulate those activities that have a *substantial economic or commercial relationship to interstate commerce*.  (4) And that "substantial relationship" must truly be substantial, i.e., if it is tenuous or attenuated, it is not sufficient under the Commerce Clause.

It is beyond any reasonable argument that sex crimes, especially those perpetrated upon children, have a substantial economic relationship to interstate commerce. There is nothing tenuous or attenuated about the relationship of sex crimes perpetrated against children and interstate commerce.  As just one example, the devastating psychological impact upon the victim can (and usually does) last a lifetime, and the economic fallout ripples across state lines almost immediately.

Also, unlike the Violence Against Women Act, SORNA has interstate travel as a jurisdictional element of the offense.  That distinction is far more than cosmetic.

Virtually every defendant heretofore charged with a violation of SORNA has asserted a Commerce Clause challenge, and as far as can be ascertained, every court has rejected it.[25]

---

[24]*See, Morrison*, 529 U.S. 615: ". . . Congress might use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority . . . ."

[25]This is *not* an exhaustive listing:  *United States v. Adkins*, 2007 WL 4335457 (N.D. Ind. 2007); *United States v. Ambert*, 2007 WL 2949476 (N.D. Fla. 2007); *United States v. Beasley*,

Section 2250 of Title 18 of the United States Code is a valid exercise of Congress' power under the Interstate Commerce Clause.

### *DOES SORNA VIOLATE THE TENTH AMENDMENT?*

Citing *Printz v. United States*, 521 U.S. 898, 935 (1997), defendant correctly points out that the Tenth Amendment to the Constitution prohibits the federal government from commandeering state officials into enacting or administering federal law. He also correctly notes that Congress may persuade or entice the states to administer a federal regulatory scheme by extending a financial incentive to the states or, alternatively, by withholding federal funds. This latter approach, of course, is what Congress has done in SORNA. Stated colloquially, Congress has said, "Implement SORNA's registration requirements and procedures, or you will forfeit ten percent of certain funds."

Recognizing that it is not a violation of the Tenth Amendment for the federal government to use the granting or withholding of federal monies as an incentive to administer a federal regulation, defendant suggests that SORNA is forcing states to register sex offenders *now*, before they have had a chance to either accept or reject the federal government's offer by implementing (or not) SORNA's provisions. Defendant suggests that this is the type of commandeering that the Tenth Amendment prohibits.

Respectfully, the court again must disagree with defendant's premise, *viz*, that the

---

2007 WL 3489999 (N.D. Ga. 2007); *United States v. Cardenas*, 2007 WL 4245913 (S.D. Fla. 2007); *United States v. Gonzales*, 2007 WL 2298004 (N.D. Fla. 2007); *United States v. Hinen*, 487 F.Supp.2d 747 (W.D. Va. 2007); *United States v. Madera*, 474 F.Supp.2d 1257 (M.D.Fla. 2007); *United States v. May*, 2007 WL 2790388 (S.D. Iowa 2007); *United States v. Pitts*, 2007 WL 3353423 (M.D. La. 2007).

federal government is forcing Iowa (or Tennessee) to register sex offenders before either of those states has decided to comply with SORNA's requirements. Iowa's registration requirements have not changed one iota, and neither has Tennessee's, after the enactment of SORNA. Defendant is being prosecuted because he traveled in interstate commerce and failed to comply with Iowa's re-registration requirements. Those requirements are no different before the enactment of SORNA than they are now.

> The Sex Offender Registration and Notification Act . . . does not require states, or their officials, to do anything they do not already do under their own laws. Currently, all states have sex offender registries enacted under state law. The Sex Offender Registration and Notification Act only requires that sex offenders register in those pre-existing state registries. The defendant provides no support for his contention that the Federal Government under this Act requires state officials to perform any obligation not only required of them under state law.

*United States v. Pitts*, 2007 WL 3353423 at *9 (M.D. La. 2007).

### CONCLUSION

For the reasons discussed above, it is respectfully recommended that defendant's motion to dismiss the indictment (Doc. 15) be denied.[26]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[26]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).